IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN OBDYKE INC. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 02-CV-8408 |
| | : | |
| OWENS CORNING, ET AL. | : | |

**MEMORANDUM & ORDER**

**SURRICK, J.**                                                                                    **MARCH 29ᵗʰ, 2004**

_____Presently before the Court are Defendants, Owens Corning, Owens-Corning Fiberglas

Technology, Inc. ("Fiberglas"), and Liberty Diversified Industries, Inc.'s ("Liberty"), Motions to

Dismiss Liberty Diversified Industries, Inc. for Lack of Personal Jurisdiction, for Partial

Summary Judgment, and to Stay this Lawsuit.  (Doc. No. 17.)

**I.      FACTS**

Plaintiff is a Delaware Corporation with its principal place of business in Horsham,

Pennsylvania.  (Compl. at ¶ 1.)  Plaintiff "produces a roof vent which is packaged in a roll and

unrolled for installation lengthwise above a gap extending along the ridge of a house roof."

(Response to Defs.' Mot. to Dismiss Liberty Diversified Industries, Inc. for Lack of Personal

Jurisdiction, for Partial Summary Judgment, and to Stay this Lawsuit [hereinafter Pl.'s Response]

at 1.)  Plaintiff states that its roll was the first to incorporate a weather barrier that permits

ventilation while "preventing inflow of wind-driven precipitation and insects."  (Id.)

Owens Corning is a Delaware corporation with its principal place of business in Toledo,

Ohio. (Chambers Aff. at ¶ 4.) Owens Corning is the parent corporation of Fiberglas, which is an

Illinois corporation with its principal place of business in Summit, Illinois. Fiberglas is a holding

company for Owens Cornings's intellectual property. (Chambers Aff. at ¶ 5.) Owens Corning

sells the Vent Sure® products, but these products are actually manufactured by Liberty's

subsidiary, Diversi-Plast Products, Inc. ("Diversi-Plast"). (Chambers Aff. at ¶ 6; Lenzen Aff. at ¶

7.) Diversi-Plast Products also markets, manufactures, sells, and offers for sale the Rigid Roll®

Plus product. (Lenzen Aff. at ¶ 7.) "Owens Corning's Vent Sure® product is identical in all

material respects to the Rigid Roll® Plus product...." (Chambers Aff. at ¶ 6.) Liberty is a

holding company for its manufacturing and marketing subsidiaries, and is "incorporated under

the laws of the state of Minnesota" with "its only office and place of business" in Minneapolis,

Minnesota. (Lenzen Aff. at ¶¶ 4-5.)

 In 1988, Plaintiff began marketing its invention under the trademark Roll Vent®.[1]

(Compl. at ¶13.) "On July 24, 1990, U.S. Patent No. 4,942,699 ('699 Patent) was issued to

Obdyke as assignee of Larry J. Spinelli covering Obdyke's Roll Vent product." (Id. at ¶14.)

Plaintiff claims that the roof vents accused of infringement, the Vent Sure® and Rigid Roll®

Plus, are similar to one another and to Plaintiff's patented product in all material respects. (Id. at

¶¶ 22, 24.)

On or about May 12, 2001, Plaintiff's counsel sent Owens Corning a letter, notifying

Owens Corning of its alleged violation of Plaintiff's '699 Patent. (Id. at ¶ 28.) Liberty's counsel

responded to the letter on June 8, 2001. (Id. at ¶ 29.) Plaintiff seeks to permanently enjoin

---

[1] Plaintiff was introduced to this invention by Larry J. Spinelli, a roofer who invented the product in the mid 1980s. Plaintiff and Spinelli came to an agreement whereby Plaintiff developed the invention and Spinelli received royalties. (Compl. at ¶¶ 9-11.)

Defendants from engaging in the alleged infringement of Plaintiff's '699 Patent; actual damages; treble damages pursuant to 35 U.S.C. § 284 for "the willful and wanton nature of the infringement"; attorneys fees pursuant to 35 U.S.C. § 285; and "such further relief as may be just." (Compl. at ¶¶ A-E.)

## II.    LEGAL STANDARDS

In cases dealing substantively with patent law, courts apply the law of the Federal Circuit in examining personal jurisdiction. Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998). In the Federal Circuit, a district court must engage in a two-step process in order to determine whether personal jurisdiction is appropriate. Hildebrand v. Steck Mfg. Co., Inc., 279 F.3d 1351, 1354 (Fed. Cir. 2002). First, service of process must be proper under the appropriate long-arm statute. Id. Pennsylvania's long-arm statute, 42 PA. CONS. STAT. ANN. § 5322(b), authorizes Pennsylvania courts "to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). Second, "the culmination of the party's activities within the forum state must satisfy the minimum contacts requirements of the due process clause." Hildebrand, 279 F.3d at 1354 (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "Due process requires that the defendant have 'minimum contacts' in the forum state, and that the exercise of jurisdiction comport with 'traditional notions of fair play and substantial justice.'" Remick, 238 F.3d at 255 (quoting International Shoe Co., 326 U.S. at 316).

Personal jurisdiction can be either general or specific. General personal jurisdiction is found when a defendant has "continuous and systematic" contacts with the forum and may be

3

exercised even when the cause of action has no relation to the defendant's forum-related activities. Red Wing, 148 F.3d at 1359. As to specific jurisdiction, in Burger King Corp. v. Rudzewicz, the United States Supreme Court stated:

> Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State. Thus where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

471 U.S. 462, 475 (1985) (internal citations omitted). "In both situations, contacts only add to the quantum for personal jurisdiction when purposefully directed at the forum or its residents. 'Random,' 'fortuitous,' or 'attenuated' contacts do not count in the minimum contacts calculus. Burger King, 471 U.S. at 475. Similarly, contacts resulting from the 'unilateral activity' of others do not count." Red Wing, 148 F.3d at 1359.

## III.   DISCUSSION

### A.   Personal Jurisdiction

Plaintiff has the burden of demonstrating that Liberty, a Minnesota corporation with its only place of business in Minnesota (Lenzen Aff. at ¶ 4), has the requisite minimum contacts with this forum to be subjected to its jurisdiction. Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (placing the burden of proof to establish minimum contacts on the plaintiff). To this end, Plaintiff states that Defendant has minimum contacts with the forum state because Liberty has placed the ridge vents "in the stream of commerce which enters

4

Pennsylvania."  (Pl.'s Response at 3.)  In support of this contention, Plaintiff points to the fact

that the ridge vent's label indicates that it is a "Trimline Building Products" and bears the

TRIMLINE® trademark, which is registered and owned by Liberty.[2]  (Id. at 4.)  In addition,

Plaintiff emphasizes that the Trimline Building Products label also bears four patent numbers

that are owned by Liberty.[3]  (Id. at 5.)

 In further support, Plaintiff identifies the statement "an LDI company" on the Trimline

Building Products label.  Plaintiff assumes, and Liberty apparently does not refute the

assumption, that LDI stands for Liberty Diversified Industries, Inc.  (Pl.'s Response at 5.)  In fact,

Plaintiff cites to a letter from Liberty's counsel that refers to Liberty as LDI.  (Id. at 6.)

 In support of its objection to personal jurisdiction, Liberty submits affidavits stating that

it does not conduct business in Pennsylvania, and does not direct business or sales to

Pennsylvania corporations or residents.  (Lenzen Aff. at ¶¶ 8-10.)  Specifically, Liberty states:

"Liberty Diversified Industries, Inc. does not ship materials or products to Pennsylvania....

Liberty Diversified Industries, Inc. does to own or lease personal or real property, or maintain

inventory, in the state of Pennsylvania....  Liberty Diversified Industries, Inc. has not negotiated

or entered into licensing agreements with a Pennsylvania company."  (Id. at ¶¶ 8-9.)  In fact,

Liberty claims that it does not market, manufacture, sell, offer for sale, import, or export the

products involved in this lawsuit, or any products whatsoever.  (Id. at ¶¶ 6-7.)  In addition,

---

 [2] Plaintiffs further note that after a search of the Pennsylvania Fictitious Names Records,
it could not locate an entry to indicate that Trimline Buildings Products is "registered to
any corporate or other entity as a fictitious name in Pennsylvania."  (Pl.'s Response at 4.)

 [3] These patent numbers are: 4,803,813; 5,094,041; 5,304,095; and 5,331,783.  (Pl.'s
Response at 5.)

Liberty asserts that the only contacts it had with the forum were related to its attorneys' response "to a series of accusatory letters sent by Plaintiff's counsel in Pennsylvania," which is considered unilateral activity under the standard set forth in <u>Burger King</u>.  471 U.S. at 475, n.17.

Liberty also explains that "'an LDI Company' refers to Trimline's relationship to Liberty, not any relationship between Liberty and the product itself", and that the product in question, the Rigid Roll® Plus, is Trimline's product, not Liberty's.  (Reply Mem. of Law in Supp. of Defs.' Mots. to Dismiss Liberty Diversified Indus., Inc. for Lack of Personal Jurisdiction, for Partial Summ. J., and to Stay this Lawsuit [hereinafter Defendants' Reply] at 3.)  We conclude that Liberty's relationship to the ridge vent in question is too attenuated to confer personal jurisdiction.  It is clear from the record that it is Diversi-Plast, not Liberty that manufactures, sells, distributes, and markets the accused product in Pennsylvania.[4]  In addition to the supporting affidavits, Liberty points to a Rigid Roll® Plus brochure that contains reference to "an LDI Company."  This brochure includes the address, phone number, website, and fax number for Trimline, not Liberty.  (Answer of Owens Corning at Ex. B.)  While Plaintiff has shown the relationship between the product's manufacturer, Diversi-Plast, and Liberty, we are not persuaded that this relationship is sufficient to meet the requirement that Liberty "purposefully availed" itself of the "privilege of conducting activities within the forum state."  <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).  According to Liberty, it "acts as the holding company for the intellectual property for Diversi-Plast and Trimline's products and as administrative and legal support for the two companies."  (Defendants' Reply at 3.)  In light of this information, we conclude that Plaintiff has failed to carry its burden of demonstrating that Liberty has had the

---

[4] We note that Plaintiff has failed to name Diversi-Plast as a defendant to this lawsuit.

requisite minimum contacts to establish personal jurisdiction.  <u>Inamed</u>, 249 F.3d at 1360.

Accordingly, we will dismiss Liberty from this lawsuit.

### B.  Summary Judgment

Defendants bring the instant Motion for Partial Summary Judgment[5] as to Liberty[6] and

Fiberglas, claiming that the two entities cannot be held liable under 35 U.S.C. § 271 because they

did not "make, use, offer to sell, or sell any patented invention within the United States, or

import into the United States any patented invention, during the term of the patent."[7]  (Mem. of

Law in Supp. of Defs.' Mots. to Dismiss Liberty Diversified Industries, Inc. for Lack of Personal

Jurisdiction, for Partial Summ. J., and to Stay this Lawsuit at 8.)  Plaintiff agrees that, pursuant to

---

[5] Defendants state that this Motion to Dismiss under Rule 12(b)(6) should be treated as a Rule 56 Motion for Summary Judgment "[b]ecause the defendants have included affidavits in support of its position."  (Mem. of Law in Supp. of Defs.' Mots. to Dismiss Liberty Diversified Industries, Inc. for Lack of Personal Jurisdiction, for Partial Summ. J., and to Stay this Lawsuit at 7.)  <u>See</u> FED. R. CIV. P. 12(b) ("If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....")

[6] Because we have concluded that we do not have personal jurisdiction over Liberty, we will review this Motion for Summary Judgment as to Fiberglas only.

[7] Thirty-five U.S.C. § 271 states, in part:

> (a)  Except as otherwise provided by this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

> (b)  Whoever actively induces infringement of a patent shall be liable as an infringer.

35 U.S.C. § 271.

§ 271(a), "merely holding title to a trademark does not constitute an act of infringement actionable under 35 USC § 271." (Pl.'s Response at 7.)  However, Plaintiff emphasizes that as a trademark owner, Fiberglas has the right to quality control of the products sold under its trademark, by either manufacturing the product itself or negotiating its production under a license agreement.  (Id.)  Plaintiff further contends that, "[w]ithout the benefit of discovery, it is not possible to determine the nature of the agreement under which the VentSure® and Owens Corning® trademarks are used, and the extent of control exercised by Fiberglas."  (Id. at 8.)  We agree.

Plaintiff argues that Fiberglas could be held liable under § 271(b) if it approved the infringing product and provided customer use instructions.  (Id. at 9-10.)  In Water Tech. Corp. v. Calco, Ltd., the Federal Circuit explained that, pursuant to § 271(b), a party "infringes by actively and knowingly aiding and abetting another's direct infringement."  7 U.S.P.Q. 2d 1097, 1103 (Fed. Cir. 1988), and that the "requisite intent to induce infringement may be inferred from all of the circumstances."  Id. at 1104.  In the instant case, Defendants argue that, unlike the defendant trademark licensor in Water Tech,  Fiberglas has no direct involvement in the production of customer instructions.  However, the supporting affidavits do not address the subject of customer instructions or other literature.  At this stage, we cannot determine whether Fiberglas might be liable for inducement of infringement under § 271(b).  See also C.R. Bard, Inc. v. Advanced Cardiovascular Systems, 911 F.2d 670, 675 (Fed. Cir. 1990) (finding § 271(b) liability where defendant provided detailed instructions and other literature on how to infringe plaintiff's patent).  We must proceed with discovery to make that determination.  Plaintiff has agreed that if Defendants are able to demonstrate that "there is no agreement requiring the right to control

quality and to approve product labeling running between Fiberglas and the entity producing and selling the Owens Corning® VentSure® ridge vents," then Plaintiff will stipulate to dismissing its claim as to Fiberglas.[8] (Id.)

### C.      Motion to Stay

Defendant's final Motion requests a stay of this lawsuit, until a case pending in the United States District Court for the District of Minnesota is resolved. In the Minnesota case, Diversi-Plast d/b/a Trimline Building Products seeks a declaratory judgment against the Plaintiff in the instant case. While Defendants acknowledge the general rule that favors the forum of the first-filed action,[9] it requests the stay under the "customer suit" exception. (Mem. of Law in Supp. of Defs.' Mots. to Dismiss Liberty Diversified Indus., Inc. for Lack of Personal Jurisdiction, for Partial Summ. J., and to Stay this Lawsuit at 9.) See Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993) (holding that exceptions to the first-filed rule are not rare and are "made when justice or expediency requires"). The customer suit exception applies "where the first suit is filed against a customer who is simply a reseller of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods." Kahn v. General Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989). In the instant case, it seems clear that Diversi-Plast is the manufacturer of both the Rigid Roll® Plus and the Vent Sure® ridge vents, and that Owens Corning is Diversi-Plast's customer. However, Defendant

---

[8] Based on Plaintiff's statement that it will agree to Fiberglas's dismissal if it becomes clear that Fiberglas cannot be held liable under § 271(b), we conclude that Plaintiff is not pursuing claims against Fiberglas under any other section of the statute.

[9] The instant lawsuit was filed on November 12, 2002, (Doc. No. 1), while the Minnesota action for declaratory judgment was filed on February 6, 2003, (Skaar Aff. at Ex. A).

brings this Motion to Stay based on the assumption that the Motions to Dismiss Liberty and for Summary Judgment as to Fiberglas (and Liberty) will be granted and that the only remaining Defendant will be Owens Corning.  (Mem. of Law in Supp. of Defs.' Mots. to Dismiss Liberty Diversified Indus., Inc. for Lack of Personal Jurisdiction, for Partial Summ. J., and to Stay this Lawsuit at 9 ("This lawsuit should be stayed, because in the final analysis, Owens Corning is the only defendant remaining, which renders this an improper 'customer suit.'").)  Because Fiberglas remains in this lawsuit, at this time, we cannot apply the customer suit exception.  Even if Plaintiff were to prevail against Diversi-Plast in the second-filed action, it would still have to litigate the question of Fiberglas's alleged § 271(b) liability, if that issue is still pending.  As a result, the customer suit exception is not applicable to this lawsuit, in its present posture.  See Kahn, 889 F.2d at 1081 (overruling district court's grant of stay because original suit included claims that could not be addressed by the second-filed suit).  Accordingly, we will deny Defendants' Motion to Stay without prejudice.  Should it become clear that Fiberglas cannot be liable under § 271(b), then Defendants may re-file their Motion to Stay at that time.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Liberty will be granted; its Motion for Partial Summary Judgment will be denied; and its Motion to Stay will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


BENJAMIN OBDYKE INC.          :          CIVIL ACTION
                              :
                              :
                              :
        v.                    :
                              :          NO. 02-CV-8408
                              :
OWENS CORNING, ET AL.         :

## **O R D E R**

_____AND NOW, this 29th day of March, 2004, upon consideration of Defendants' Motions to

Dismiss Liberty Diversified Industries, Inc. for Lack of Personal Jurisdiction, for Partial

Summary Judgment, and to Stay this Lawsuit, (Doc. No. 17), and all papers filed in support

thereof and opposition thereto, it is hereby ORDERED that:

   1.    Defendants' Motion to Dismiss Liberty Diversified Industries, Inc. for Lack of

         Personal Jurisdiction is GRANTED;

   2.    Defendants' Motion for Partial Summary Judgment is DENIED; and

   3.    Defendants' Motion to Stay this Lawsuit is DENIED.

   IT IS SO ORDERED.


                                            BY THE COURT:



                                            _____
                                            R. Barclay Surrick, Judge

11